IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

WILLIAM G. THORNE,           )
                             )
        Plaintiff,           )
                             )
        v.                   )      1:08cv601 (JCC)
                             )
KELLY HALE et al.,           )
                             )
        Defendants.          )

**M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on three motions to dismiss a civil rights lawsuit filed against a number of individuals and entities involved in administering a "drug court" program in the Rappahannock area.  The motions were filed by: Defendant Karl Hade, the Executive Secretary of the Supreme Court of Virginia ("Hade"); Defendant Judith Alston, a former Virginia Department of Corrections employee ("Alston"); Defendants Kelly Hale ("Hale") and Sharon Killian ("Killian"), both of whom allegedly served as managers or directors of the drug court; the Rappahannock Area Community Services Board (the "RACSB"), the Rappahannock Regional Jail (the "Regional Jail"), and the Rappahannock Regional Jail doing business as the Rappahannock Regional Drug Court (collectively, the "Defendants").[1]  Also

---

[1] The Office of the Attorney General of Virginia submitted separate motions to dismiss on behalf of Hade and Alston.  Counsel for defendants Hale, Killian, the RACSB, the Regional Jail, and the Regional Jail d/b/a the Rappahannock Regional Drug Court submitted a single, consolidated motion to

before the Court is a motion by Hade and Alston to strike certain supplemental evidentiary filings.

For the reasons stated below, the Court will grant in part and deny in part Defendants' motions to dismiss and deny, without prejudice, the motion to strike.  The Court will dismiss all of Thorne's claims brought pursuant to the ADA and state law, all of his requests for equitable and injunctive relief, and all claims against defendants Hade, Alston, the Rappahannock Regional Jail, and the Rappahannock Regional Jail doing business as the Rappahannock Regional Drug Court.  The Court will deny the motions to dismiss the § 1983 claims against the RACSB, Hale, and Killian.

## I. Background

*Pro se* plaintiff William G. Thorne ("Thorne") brought this suit against several individuals and entities that took part in treating him for his drug and alcohol addictions through Virginia's drug court program.  His experience with the drug court stems from a state criminal proceeding for the possession of a controlled substance.  Thorne filed his original complaint (the "Complaint") in June 2008.  At oral argument on the motions to dismiss filed by Defendants, the Court granted Thorne leave to amend the Complaint.  He did so on October 22, 2008.

---

dismiss.

The amended complaint ("Amended Complaint") re-alleged, by reference, everything in the Complaint.[2]  It also changed the allegations against the Executive Secretary of the Supreme Court of Virginia to allegations against "the person of Karl Hade, the Executive Secretary of the Supreme Court of Virginia," changed the allegations against the Drug Court to allegations against the Regional Jail or, in the alternative, the Regional Jail doing business as the Drug Court (henceforth, the "Regional Jail/Drug Court"), added new allegations pursuant to the Americans with Disabilities Act and the Virginia Administrative Code, and clarified the damages Thorne claims to have suffered as a result of the alleged constitutional, statutory, and state law violations.  *See* Am. Compl. at ¶¶ 151-52; 160-62; 172-74.  The allegations in the Amended Complaint are as follows.

In March 2006, Thorne entered into a plea agreement on a possession of a controlled substance charge.  As part of the plea deal, he agreed to undergo treatment for drug and alcohol addiction.  Pursuant to his plea, the Virginia court in which he pled guilty placed Thorne under the supervision of the Regional Jail/Drug Court, which required him to participate in the Alcoholics Anonymous ("AA") and Narcotics Anonymous ("NA") addiction treatment programs.  Had Thorne successfully completed

---

[2] Because the Amended Complaint incorporates by reference every allegation in the Complaint and continues the Complaint's sequential paragraph numbering, this Memorandum Opinion will refer to and cite both documents as the Amended Complaint.

the Regional Jail/Drug Court program, the state would have dropped the charge against him.  The RACSB served as the substance abuse and mental health treatment provider for the Regional Jail/Drug Court.  *See* Am. Compl. at ¶¶ 1-16.  It appears that, after encountering a number of treatment-related difficulties that caused him to fail out of the program, Thorne was convicted of the drug offense in April 2007.  *Id.* at ¶ 13.

Thorne complains that the practices of the AA and NA programs contravened his religious beliefs.  He claims that the AA and NA programs are state-sponsored religions that violate the Free Exercise clause of the First Amendment.  *Id.* at ¶¶ 17-18.  Among numerous other allegations, Thorne appears to have been offended by the public recitation of the Lord's Prayer at AA meetings.  *See id.* at ¶¶ 24-25 (citing Matthew 6:5-7 (New Am. Standard Bible)).  Other allegations include being subjected to "mind control" and being "forced to pray to pagan gods with individuals of dissimilar and contradictory beliefs."  Am. Compl. at ¶¶ 63, 69.

Thorne, who was involved in a religious liberties lawsuit against AA in 1998,[3] now claims that he would never have entered into a plea agreement if he had known that it would entail mandatory AA or NA participation.  *Id.* at ¶ 30.  He also claims that Defendants refused to allow him to participate in

_____

[3] *See* civil action no. 1:98-cv-331 (E.D. Va.).

4

other drug treatment programs more amenable to his religious beliefs. *Id.* at ¶¶ 27-28.

Asserting that the responsibility for informing him about the practices of the Regional Jail/Drug Court prior to his plea lay with the Virginia court and the Commonwealth's Attorney rather than with his counsel, Thorne states that he never waived his constitutional rights as part his plea. *Id.* at ¶ 50. He claims that he was unlawfully incarcerated for various periods of time as "sanctions" for his failures to participate in the Regional Jail/Drug Court program and that, because these "sanctions" were not deducted from his prison term, they improperly extended Thorne's "actual and potential incarceration." *Id.* at ¶ 52. Thorne asserts that he was denied the right to counsel during hearings held to determine whether to levy "sanctions" against him. He also claims that several defendants presented evidence against him in a way that prevented him from defending himself. *Id.* at ¶¶ 54-58.

Thorne believes that these and other practices related to the Regional Jail/Drug Court treatment program violated his First, Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendment rights. He also alleges violations of the Americans with Disabilities Act, the Civil Rights Act of 1964, and the Civil Rights Act of 1871, 42 U.S.C. § 1983 (through which, the Court will presume, he brings his constitutional claims).

5

Finally, Thorne argues that Defendants violated Virginia statutory law and various sections of the Virginia Administrative Code related to the provision of mental health services.  In recompense, Thorne asks: (1) for $60,000,000 in damages; (2) that the Court declare his state court plea agreement null and void; and (3) that the Court order the Civil Rights Division of the Department of Justice to launch an investigation into the Regional Jail/Drug Court.  Am. Compl. at ¶ 149.

On November 6, 2008, Virginia's Office of the Attorney General filed, with the requisite *Roseboro* notices, separate motions to dismiss Hade and Alston for lack of jurisdiction. Thorne did not respond to either motion.  On November 11, Defendants Hale, Killian, the Regional Jail, the Regional Jail/Drug Court, and the RACSB filed a motion to dismiss and a *Roseboro* notice.  Thorne responded on December 3, 2008.  After the hearing on the motions to dismiss, Thorne submitted additional papers in support of his ADA claims.  Defendants Alston and Hade objected to these filings and moved to strike them from the docket.  Thorne opposed their motion on February 24, 2009.  These motions are before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint.  *See Randall v. United States*, 30

F.3d 518, 522 (4th Cir. 1994) (citation omitted).  In deciding a motion to dismiss, "the material allegations of the complaint are taken as admitted."  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citation omitted).  Moreover, "the complaint is to be liberally construed in favor of plaintiff."  *Id.*  A motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Defendants may attack subject matter jurisdiction in one of two ways.  First, defendants may contend that the complaint fails to allege facts upon which subject matter jurisdiction can be based.  *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *King v. Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780 (E.D. Va. 2002).  In such instances, all facts alleged in the complaint are presumed to be true.  *Adams*, 697 F.2d at 1219; *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995).

Alternatively, defendants may argue that the jurisdictional facts alleged in the complaint are untrue. *Adams*, 697 F.2d at 1219; *King*, 211 F. Supp. 2d at 780.  In that situation, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Virginia v. United States*, 926 F. Supp. at 540 (citing *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Adams*, 697 F.2d at 1219; *Ocean Breeze Festival Park, Inc. v. Reich*, 853 F. Supp. 906, 911 (E.D. Va. 1994).  In either case, the burden of proving subject matter jurisdiction falls on the plaintiff. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219.

Complaints filed by *pro se* plaintiffs are construed more liberally than those drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Khozam v. LSAA, Inc.*, 2007 WL 2932817 (W.D.N.C. 2007).  "However inartfully pleaded by a pro se plaintiff, allegations are sufficient to call for an opportunity to offer supporting evidence unless it is beyond doubt that the plaintiff can prove no set of facts entitling him to relief." *Thompson v. Echols*, 1999 WL 717280 at *1 (4th Cir. 1999) (citing *Cruz v. Beto*, 405 U.S. 319 (1972)).  While a court is not expected to develop tangential claims from scant

8

assertions in a complaint, if a *pro se* complaint contains potentially cognizable claims, the plaintiff should be allowed to particularize those claims. *Id.* (citing *Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir. 1985); *Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir. 1965)).

### III. Analysis

Thorne raises constitutional claims through § 1983, federal statutory claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"), and state law claims.[4]  He asks for damages as well as equitable and injunctive relief.  Because of the number of defendants and the complexity of the allegations, the Court will review Thorne's claims in two stages.  First, it will consider his ADA claims, state law claims, and requests for injunctive and equitable relief.  As explained in more detail below, none of those claims and requests can proceed.  The Court will then consider each defendant's arguments for dismissal of the § 1983 claims.

---

[4] Thorne also lists the Civil Rights Act of 1964, Pub. L. 88-352, 78 Stat. 241, among the sources of law under which he brings his claim.  *See* Am. Compl. at preamble.  The Amended Complaint, however, does not further cite the Act or allege any violations of the Act.  Instead, it focuses exclusively on constitutional violations, which can form the basis of a § 1983 suit, and ADA and state law violations.  As Thorne does not appear to have based any of his allegations on any part of the Act, the Court will not further consider it in its analysis of the motions to dismiss.  As noted above, the Court has no duty to develop hypothetical claims for a *pro se* plaintiff in order to test whether they survive a motion to dismiss.

A. <u>ADA Claims</u>

Thorne asserts that the Defendants violated his rights under the ADA.  He did not state which provisions of the ADA Defendants violated.  The Court will presume that, in keeping with the rest of the Amended Complaint, Thorne intended to cast his net broadly.  Title II of the Act applies to the services provided by state and local governments.  Title III applies to, *inter alia*, public accommodations.  For the reasons stated below, the Court will dismiss Thorne's ADA claims, whether they are brought pursuant to Title II or Title III.

1. <u>Statute of Limitations</u>

Thorne's claims under the ADA fail for several reasons. First, the statute of limitations has run on any otherwise-viable ADA claim.  The weight of authority agrees that the statute of limitations for ADA claims in Virginia is one year.  *See Lewis v. Aetna Life Ins. Co.*, 993 F. Supp. 382, 385 (E.D. Va. 1998); *see also Brown v. Dep't of Corr.*, 2009 WL 87459, at *8 (W.D. Va. Jan. 9, 2009); *Thompson v. Va. Dep't of Game and Inland Fisheries*, 2006 WL 1310363, at *3 (W.D. Va. May 14, 2006), *aff'd*, 196 Fed. Appx. 164 (4th Cir. 2006); *M.S. v. Fairfax County Sch. Bd.*, 2006 WL 721372, at *4 (E.D. Va. March 20, 2006), *vacated in part on other grounds*, 553 F.3d 315, 2009 WL 81654 (4th Cir. 2009); *Childress v. Clement*, 5 F. Supp. 2d 384, 388-89 (E.D. Va. 1998). *But cf. Morrissey v. Rockingham Mem'l Hosp.*, 2006 WL 297741, at

*2 (W.D. Va. Feb. 7, 2006) (adopting the two-year personal injury statute of limitations); *Peters v. Blue Ridge Reg'l Jail*, 2006 WL 3761624, at *2 (W.D. Va. Dec. 21, 2006) (same).

The ADA itself does not specify a statute of limitations.  District courts look to analogous state statutes of limitations to find the one most applicable to the ADA.  *See* 42 U.S.C. § 1988; *Wilson v. Garcia*, 471 U.S. 261, 266, 268 (1985); *Lewis*, 993 F. Supp. at 385.  Relying on the Fourth Circuit's finding that the Virginia Rights of Persons with Disabilities Act, Va. Code Ann. § 51.5-40 et seq., provides the analogous statute of limitations for claims brought under the Rehabilitation Act, *Lewis* held that a one-year statute of limitations should apply to claims brought under the ADA, which was modeled on the Rehabilitation Act.  993 F. Supp. at 385 (citing *Wolsky v. Med. Coll. of Hampton Rds.*, 1 F.3d 222, 223 (4th Cir. 1993)).  This Court agrees that a one-year statute of limitations applies in the present case.

Here, the statute of limitations bars Thorne's ADA claims.  Thorne pled guilty to the charges against him on March 7, 2006.  Am. Compl. at ¶ 5.  On March 13, 2006, he was "informed of the Drug Court Program Conditions and Terms, namely it's [sic] State sponsored religious requirements, unlawful imprisonment terms, and involuntary servitude demands . . . ."  *Id.* at ¶ 8. He was finally convicted of the crime to which he had previously

11

pled guilty on April 23, 2007, before which date "all of the
allegations cited in this Complaint occurred."  *Id.* at ¶¶ 13-14.
Thorne did not file this lawsuit until June 10, 2008.  Even if
Thorne became aware of the ADA violations on April 23, 2007, the
lawsuit still falls outside the one-year statute of limitations.

     In the supplementary evidentiary filing that is the
object of defendants Hade and Alston's motion to strike, Thorne
argues that the one-year statute of limitations does not bar his
ADA claims.  In support, he attached a letter complaining of ADA
violations that he had previously submitted to a number of
entities, including the Department of Justice, the Executive
Secretary of the Supreme Court of Virginia, and the Virginia
Department of Mental Health, Mental Retardation, and Substance
Abuse Services.  *See* Pl.'s Supp. Filing.

     Thorne submitted fax cover sheets showing that he faxed
the letter to several recipients before April 23, 2008 – the date
by which the statute of limitations had run.  His evidentiary
submission shows that he faxed his complaint letter to the state
and federal agencies on April 8, 9, and 17 of 2008.  The Court
notes that the letter was untimely submitted to the agencies
under 28 C.F.R. § 35.170(b), which requires the filing of a
complaint "not later than 180 days from the date of the alleged
discrimination . . . .".  Even a timely filing with a federal

agency, however, does not toll the statute of limitations for the filing of a judicial complaint.

Assuming the veracity of Plaintiff's supplemental submission, his ADA claims still fall outside the one-year statute of limitations.  In lawsuits brought pursuant to Title I of the ADA, for employment discrimination, filing a charge with the Equal Employment Opportunity Commission tolls the ADA statute of limitations, because Title I requires the exhaustion of administrative remedies prior to filing suit.  *Lewis*, 993 F. Supp. at 387.  As the court explained in *Lewis*, however, administrative notice does not toll the statute of limitations for actions brought pursuant to a different Title of the ADA that does not contain an exhaustion requirement.  *Id.* (holding that the statute of limitations was tolled for claims under Title I but not for claims under Title III).

Here, Thorne's asserted ADA claims all center on the provision of public services.  As such, they probably fall under Title II.  The same analysis used in *Lewis* applies directly to any claims brought under Title II: because plaintiffs are not required to exhaust their administrative remedies before bringing suit pursuant to Title II, notifying state or federal agencies of a potential claim does not toll the statute of limitations.[5]  *Cf.*

---

[5] If Thorne's claims could be asserted under Title III, the same tolling analysis used in *Lewis* applies directly and forbids tolling.  *See* 993 F. Supp. at 387.

*Smith v. Philadelphia*, 345 F. Supp. 2d 482, 486 (E.D. Pa. 2004) (explaining that Title II does not require a plaintiff to exhaust administrative remedies before filing suit); *see also* 28 C.F.R. § 35.172, Appx. A ("[b]ecause the act does not require exhaustion of administrative remedies, the complainant may elect to proceed with a private suit at any time.").

Where a plaintiff is not obligated to take administrative action before instituting an ADA suit, "the commencement of the statute of limitations could not be linked to any administrative procedure" – instead, a claim accrues upon "discovery of the original act of discrimination." *Thompson v. Virginia Dept. of Game and Inland Fisheries*, 2006 WL 1310363, at *4 (W.D. Va. May 14, 2006). Thorne's ADA claims are time-barred. They accrued, at the very latest, on April 23, 2007.[6] He did not file suit in this Court until June 2008.

Finally, equitable tolling does not apply in this situation. Equitable tolling may extend the statute of limitations in "rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330

---

[6] In fact, if Thorne ever had a viable ADA claim, it probably accrued on March 13, 2006, when he was "informed of the Drug Court Program Conditions and Terms, namely it's [sic] State sponsored religious requirements, unlawful imprisonment terms, and involuntary servitude demands . . . ." Am. Compl. at ¶ 8.

(4th Cir. 2000); *see Warfle v. Md. Dept. of Health and Mental
Hygiene*, 2008 WL 4516384, at *3 (D. Md. Sept. 30, 2008).  To
invoke the doctrine, a plaintiff must be able to show "(1)
extraordinary circumstances, (2) beyond his control or external
to his own conduct, (3) that prevented him from filing on time."
*Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003).  No such
circumstances exist in this case.  In fact, the letter of
complaint submitted with Thorne's supplemental evidentiary filing
shows that he had already planned to file a separate federal
civil action.  His tardiness in doing so cannot be excused by
equitable tolling.

       a. <u>Motion to Strike the Supplemental Submissions</u>

      While the supplemental evidentiary submissions are
irrelevant to the matters before the Court, the Court did not
find it inappropriate to consider them for the limited purpose of
evaluating Thorne's ADA claims, in light of his *pro se* status.
Because the admissibility of the supplemental evidentiary
submission has no bearing on the motions to dismiss, the Court
will deny, without prejudice, the motion to strike by defendants
Hade and Alston.

      2. <u>Failure to State a Claim</u>

      Even if Thorne had brought his claim in a timely
fashion, his allegations do not state a viable ADA claim.  Under
Title II of the ADA, "no qualified individual with a disability

15

shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. A prima facie case under Title II of the ADA requires a showing that: (1) the person is disabled; (2) the person is otherwise qualified for the benefit in question; and (3) the person was excluded from the benefit due to discrimination solely on the basis of the disability. *Baird v. Rose*, 192 F.3d 462, 467 (4th Cir. 1999).

Title III contains a general prohibition on discrimination similar to that in Title II: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations or any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Title III facilitates access for the disabled to places of "public accommodation." *See Montalvo v. Radcliffe*, 167 F.3d 873, 876 (4th Cir. 1999). The Court will assume, for the purposes of this motion, that at least one of the entities sued by Thorne could be construed as a "public accommodation."

Thorne asserts that he qualifies as disabled because he suffers from bipolar disorder and drug and alcohol addiction. Assuming *arguendo* that the Amended Complaint alleges the first

16

two elements of a prima facie case under Title II, Thorne's ADA allegations fail because the facts he alleges do not state a claim that he was excluded from a government benefit due to discrimination based on his disability.  Likewise, Thorne's allegations do not state a claim under Title III of the ADA; read in the light most favorable to Thorne, they do not recite any instances of discrimination related to his alleged disability.

Thorne's ADA-related allegations appear at ¶¶ 90-113 and 160-162 of the Amended Complaint.  The allegations state, briefly, that Alston improperly required Thorne to stop taking mental health medications prescribed to him by physicians at a psychiatric hospital, that other defendants "failed to protect the overall health of the Plaintiff," that Thorne was denied the use of medications to treat alcohol abuse "due to the established religious position of [several defendants]," and that he was not protected from "questionable counseling practices."  *See* Am. Compl. at ¶¶ 90-113.

None of these allegations suffices to state a claim under the ADA.  Nothing in the Amended Complaint suggests that Thorne was excluded from a benefit given to other, non-disabled persons.  Nor does Thorne allege that any instances of purported "discrimination" were due to his disability.  In fact, ¶ 103 specifically states that the RACSB and Regional Jail/Drug Court denied Thorne's request to use certain medications to treat his

17

alcohol abuse "due to the[ir] established religious position."
The discrimination that Thorne claims to have suffered was
religious in nature.  He does not – and cannot – allege that his
religious beliefs should be recognized as disabling.
Additionally, the individual defendants worked as part of a
program specifically set up to treat substance-dependent
criminals.  Thus, the persons they encountered all shared, to
some extent, Thorne's claimed disability.  Nothing in the Amended
Complaint suggests any differential treatment based on
disability.

Thorne further alleges that Defendants violated several
ADA regulations.  Am. Compl. at ¶¶ 160-62.  He claims that
Defendants violated his right to take prescription medication
under 28 C.F.R. § 35.131 and violated 28 C.F.R. §§ 35.130(b)(2)
and 35.134(a)-(b) by coercing him into a mandatory AA/NA program.

None of Thorne's allegations supports the existence of
any such violation.  Section 35.130(b)(2) states that public
entities cannot deny the participation of qualified disabled
individuals in "services, programs, or activities that are not
separate or different."  28 C.F.R. § 35.130(b)(2).  Thorne has
not alleged that any defendant improperly prevented him from
participating in a program offered to non-disabled individuals.
Indeed, there is no allegation that the Commonwealth of Virginia

18

or any of the defendant entities runs different drug treatment programs for disabled and non-disabled individuals.

Section 35.134 forbids discrimination for the purposes of retaliation or coercion based on an individual's exercise of an ADA right or involvement in an "investigation, proceeding, or hearing" under the ADA.  First, no ADA proceeding occurred here. Second, as explained above, Thorne has not pled any facts that show discrimination.  Section 35.134 does not apply to Thorne.

Section 35.131(b)(1) states that "[a] public entity shall not deny health services, or services provided in connection with drug rehabilitation, to an individual on the basis of that individual's current illegal use of drugs, if the individual is otherwise entitled to such services."  Thorne does not contend, however, that any of the Defendants denied him health services.  Instead, his Amended Complaint takes issue with the manner in which those services were delivered.

Lastly, Thorne specifically alleges that Alston required him, as part of his drug treatment program, to stop taking certain prescription drugs.  The Amended Complaint does not claim, however, that discrimination against Thorne as an addict led to this demand.  Indeed, there is nothing to suggest that Alston demanded something of Thorne that she did not demand of anyone else – much less of someone else who did not have Thorne's claimed disability, which, presumably, those seeking

substance abuse treatment all shared.  The Drug Court program was set up to help individuals battling addiction.  It is difficult to imagine how Thorne could have been treated differently based on a disability that afflicted everyone else in the treatment program.  Thorne has failed to state an ADA claim against any defendant.

### 3. ADA Liability for "Public Entities"

Additionally, even if Thorne could state a valid ADA claim within the statute of limitations, the individual defendants could not be liable for violations of Title II.  *See Baird v. Rose*, 192 F.3d 462, 471-72 (4th Cir. 1999); *see also McNulty v. Bd. of Educ. of Calvert County*, 2004 WL 1554401, at *4 (D. Md. July 8, 2004).  Title II applies to "public entities." 42 U.S.C. § 12132.  The ADA defines a "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government . . . ."  *Id.* at § 12131(1).  As the Eighth Circuit explained in *Alsbrook v. City of Maumelle*, individuals cannot be sued in their personal capacities under Title II because the term "public entity" does not include "individuals." 184 F.3d 999, 1005 n.8 (8th Cir. 1999); *see also Pathways*

*Psychosocial v. Town of Leonardtown*, 133 F. Supp. 2d 772, 780 (D. Md. 2001).[7]

   B. <u>State Law Claims</u>

      In the Amended Complaint, Thorne attempts to raise claims based on Virginia law concerning the administration of the state's Mental Health, Mental Retardation and Substance Abuse Services.  Am. Compl. at ¶ 177.  Thorne also claims that Defendants' policies and practices violate several provisions of the Virginia Administrative Code, including 12 VAC § 35-105-150(b) and 12 VAC § 35-1050820(2) and (14).

      Thorne's allegation that Defendants were negligent pursuant to Va. Code Ann. § 37.2-100 does not state a cause of action against any Defendant.  Title 37.2 of the Code of Virginia establishes the Commonwealth's Mental Health, Mental Retardation, and Substance Abuse Services.  It does not create or otherwise authorize a cause of action based on the delivery of such services.

      The Virginia Administrative Code citations are equally infirm.  Thorne alleges that 12 VAC § 35-105-820(2) "sanctions" the policies of Defendants Hale and the Regional Jail/Drug Court

─────────────

      [7] In *Bruggeman v. Blagojevich*, 324 F.3d 906, 912-13 (7th Cir. 2003), the court recognized that an earlier decision holding that state officials cannot be sued under Title II of the ADA was abrogated by *Board of Trustees v. Garrett*, 531 U.S. 356, 374 n.9 (2001), in which the Supreme Court explained that some ADA suits against state officials – for injunctive relief – are authorized under *Ex parte Young,* 209 U.S. 123 (1908).  Here, though, Thorne sued for damages under the statute, not for injunctive relief.

because these policies are "'humiliating, degrading, [and] abusive.'"  Am. Compl. at ¶ 173; *see* 12 VAC § 35-105-820(2). Additionally, he claims that the Regional Jail/Drug Court's placement of him under electronic house arrest, which had the effect of "wak[ing] the plaintiff randomly 5 or 6 times each night," violates 12 VAC § 35-105-820(14).  That section contains a licensing rule that prohibits the "[d]eprivation of opportunities for sleep or rest except as ordered by a licensed physician for a legitimate medical purpose and documented in the individual's record."

The regulations cited by Thorne, however, do not create a cause of action.  Nor do they serve independently as prohibitions on the activities of service providers.  Instead, they were promulgated "for the licensing of providers of mental health, mental retardation, [and] substance abuse . . . services."  *See* 12 VAC §§ 35-105-10 and 35-105-30.  Thorne's allegations do not turn on the licensing requirements under this section of the Virginia Administrative Code.  Accordingly, the Court will dismiss Thorne's claims based on the Virginia Administrative Code.

C. <u>Claims for Equitable and Injunctive Relief</u>

Thorne requests several forms of equitable and injunctive relief.  He asks the Court to vacate his plea agreement and, so as to "prevent further injustice and harm to

22

other individuals," to order the Department of Justice to investigate all actions taken by the Drug Court.  Am. Compl. at ¶ 149.  Thorne also asks the Court to review "all questionable Drug Court terminations so as to correct, post haste, [sic] other miscarriages of justice against others similarly situated . . . ."  *Id.*  Among other requests, Thorne asks the Court to (1) order the Regional Jail/Drug Court to comply with the Constitution and (2) require Defendants to make available drug recovery programs which "may be of benefit to any Drug Court participant . . . no matter what the religious belief (or lack thereof) [sic]."  *Id.*

      1. <u>Unavailable Remedies</u>

      None of these requested forms of relief is available to Thorne.  First, this Court cannot order the Department of Justice to investigate the Regional Jail/Drug Court, or, for that matter, to take any action whatsoever in the context of this case.  The Department of Justice, a division of the executive branch of the federal government, is not a party to this suit.

      Under the same rationale, it is clear that the Court would have no basis to vacate Thorne's plea agreement and declare it unconstitutional and null and void.  *See id.*  Thorne claims that, because no one disclosed the exact nature of the drug court program into which he elected to enter prior to his provisional

23

guilty plea, that plea was "coerced" in a manner that violated his constitutional rights.  *Id.* at ¶¶ 8, 149.

Setting aside the host of comity, federalism, and jurisdictional concerns that would preclude a Court declaration that Thorne's plea, or the conviction that followed, is "null and void," the Court cannot grant Thorne's request because he does not allege that any of the named Defendants caused the constitutional violation.  Thorne claims that he was "not informed as to the full extent of the Drug Court Program Conditions and Terms, namely it's [sic] State sponsored religious requirements . . . until 13 March 2006."  *Id.* at ¶ 8.  He does not claim that any of the Defendants had anything to do with his plea agreement.  Indeed, from the face of the Complaint it is clear that Thorne's interactions with Defendants did not begin until after he pled guilty.

Thorne did not bring this suit against any of the individuals or entities directly involved with his plea – the prosecuting attorney, his defense attorney, or the state court.  Thus, his request to vacate his plea agreement is not a remedy requested against any party to this action.

Thorne could have sought the remedy he requests in several ways.  He could have moved to vacate his plea pursuant to Va. Code Ann. § 19.2-296, which allows a defendant to withdraw a plea before sentencing and allows the court to "set aside the

judgment of conviction and permit the defendant to withdraw his plea" up to twenty-one days after sentencing in order to "correct manifest injustice."  Thorne also could have appealed his sentence of conviction, which followed the disputed guilty plea, through the state court system.  In any event, Thorne's Amended Complaint does not name as a defendant any party involved in the purported constitutional violation.  The Court cannot grant relief in the abstract; in this situation, the requested relief is untethered to any of Thorne's claims against the named Defendants.[8]

### 2. Standing Limitations

Thorne lacks standing to request an order or declaratory judgment requiring the Regional Jail/Drug Court to take any action or requiring Defendants (or the Commonwealth) to change their drug recovery programs for the benefit of others.

---

[8] Even if there were no such barrier to Thorne's request, granting it would be problematic for a number of reasons.  First, the Court would not have jurisdiction to entertain a suit in which Thorne sought review of a state court judgment of conviction because that judgment injured him.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005).  As a general matter, § 1983 does not allow federal district courts to entertain appeals from state court judgments.  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).  Here, it appears that Thorne's request to vacate his plea agreement would be, in effect, a request to vacate his judgment of conviction – which, under the *Rooker/Feldman* doctrine and 28 U.S.C. § 1257, this Court cannot do.  *See Exxon Mobil Corp.*, 544 U.S. at 291-92; *Davani v. Virginia Dept. of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006); *see also Erlandson v. Northglenn Mun. Court*, 528 F.3d 785, 788-89 (10th Cir. 2008) (holding that the *Rooker/Feldman* doctrine prevents a district court from granting declaratory or injunctive relief to a litigant challenging a state court judgment of conviction).  Second, Thorne's request may be subject to a preclusion defense.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984).

The constitutional violations Thorne alleges occurred during his interactions with the Regional Jail/Drug Court.  Those interactions have ceased.  Prior to filing this lawsuit, Thorne was discharged from the drug court program, convicted of the underlying charge against him, and sentenced.  *See* Am. Compl. at ¶¶ 13, 148, 149, 164.

In *City of Los Angeles v. Lyons*, the Supreme Court held that an individual had standing to sue for his own injuries but not, in most instances, for injunctive relief on behalf of others.  461 U.S. 95 (1983).  The equitable remedy of an injunction will not issue absent a showing of irreparable injury, "a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again – a 'likelihood of substantial and immediate irreparable injury.'" *Lyons*, 461 U.S. at 111 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)).

Like the plaintiff in *Lyons*, Thorne cannot request injunctive relief against the Regional Jail/Drug Court or any other defendant without a showing of a real or immediate threat that he will be wronged again.  The facts pled in the Amended Complaint reveal no such possibility.  Additionally, courts usually do not allow litigants to assert claims for injuries suffered by others.  *See Warth v. Seldin*, 422 U.S. 490, 499-500 (1975) (citations omitted); *see also United Food & Commercial*

*Workers v. Brown Group*, 517 U.S. 544, 557 (1996).  For these reasons, Thorne's claims for prospective relief against Defendants must be dismissed.

To summarize, the Court will dismiss all of Thorne's claims brought under the ADA and state law.  The Court also finds that it cannot grant Thorne's requests for injunctive and equitable relief.  It next considers whether Thorne has pled a valid § 1983 claim against each defendant.

D. <u>Section 1983 Claims – Entities</u>

Defendants contend that the RACSB and the Regional Jail/Drug Court could not violate Thorne's constitutional rights because they are entities.  Thus, they argue, Thorne has no legal basis on which to assert § 1983 claims against them.  Def.'s Mem. in Supp't at 2-3.

The Court agrees that the Regional Jail and, if it is intended to denote a separate defendant, the Regional Jail/Drug Court, are not "persons" subject to suit under § 1983.  At this stage of the litigation, however, the Court does not have enough information about the RACSB to dismiss it from this suit.

A plaintiff can state a cause of action under § 1983 by alleging a deprivation of a right under the Constitution or federal law caused by a "person" acting "under color of state law."  42 U.S.C. § 1983.  States, and state government entities that are considered arms of the state under the Eleventh

27

Amendment, are not "persons" under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989).  Municipalities and local government units, however, are treated as "persons" under § 1983.  *Monell v. Dep't of Social Services of New York*, 436 U.S. 658, 690 (1978).  They can be held liable when a constitutional violation results from the enforcement of a municipal policy or practice, or the decision of a final municipal policymaker.  *Id.* at 691.

　　1. Regional Jail/Drug Court

　　Thorne's Amended Complaint replaces references to the "Rappahannock Regional Drug Court" in the Complaint with "Rappahannock Regional Jail or the Rappahannock Regional Jail doing business as the Rappahannock Regional Drug Court."  Am. Compl. at ¶ 152.  From this replacement, it appears that Thorne intended to sue the Regional Jail for its role in hosting or otherwise facilitating the drug court rather than the drug court entity itself.[9]

---

[9] Had Thorne brought § 1983 claims against the Drug Court, they also would have been subject to dismissal.  In Virginia, Drug Treatment Courts are specialized dockets within the normal structure of the state court system. *See* http://www.courts.state.va/dtc/home.html.  The state court system is an arm of the state government and is thus immune from suit under the 11th Amendment and *Will*.  *See* 491 U.S. at 70.  Even the provision of judicial services within the *municipal* realm is generally considered immune from suit under the Eleventh Amendment.  *See Tennessee v. Lane*, 541 U.S. 509, 527 n.16 (2004) (citing *Callahan v. Philadelphia*, 207 F.3d 668, 670-74 (3d Cir. 2000); *Kelly v. Municipal Courts*, 97 F.3d 902, 907-08 (7th Cir. 1996)).  Additionally, the same limitations that apply to § 1983 suits against entities like jails would likely provide an independent bar to a suit against the drug court itself.

The Regional Jail, however, is not a "person" who can be sued under § 1983.  *See Preval v. Reno*, 203 F.3d 821 (4th Cir. 2000) (unpublished per curiam decision) ("the Piedmont Regional Jail is not a 'person' and is therefore not amenable to suit under § 1983"); *Brooks v. Pembroke City Jail*, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."); *see also Jenkins v. N. Cent. Reg'l Jail*, 2009 WL 484215, at *2 (N.D. W. Va. Feb. 25, 2009); *Dillihay v. Atlantic County Gov't*, 2008 WL 141113, at *4 n.1 (D. N.J. Jan. 9, 2008) (collecting cases in which courts rule that a jail is not an entity subject to suit under § 1983).  Accordingly, the Regional Jail and the Regional Jail "doing business as the Rappahannock Regional Drug Court" must be dismissed for failure to state a claim.

2. <u>RACSB</u>

Defendants suggest that the Court should dismiss the RACSB because, as "an agency of the counties and a city in the Rappahannock area," it should have the same immunity as a Virginia county.  Def.'s Mem. in Supp. at 8.  At oral argument, defense counsel for the RACSB again took the unhelpful position that the RACSB should be treated like a county.  Counties are subject to suit under § 1983 for the unconstitutional results of their policies and practices.  *Monell v. Dep't of Social Services*

*of New York*, 436 U.S. 658, 690 (1978); *Wolf v. Fauquier County Bd. of Supervisors*, 555 F.3d 311, 321 (4th Cir. 2009).

Setting to one side the weakness of the RACSB's argument for dismissal, at this stage of the litigation the Court does not have before it information sufficient to determine whether the RACSB is a state agency, a municipal entity potentially subject to suit under § 1983, or, like the jail, an entity not subject to suit under § 1983. *See Wolf*, 555 F.3d at 322 (reviewing summary judgment in favor of Fauquier County in a § 1983 case and finding that the suit should have named a County Social Services Board as the proper defendant). Thus, the Court cannot say that Thorne does not have a valid claim against the RACSB. Its motion to dismiss will be denied.

E.   <u>Section 1983 Claims – Defendants Hade and Alston –</u>
     <u>Official Capacity</u>[10]

Hade is the Executive Secretary of the Supreme Court. As such, he is a state official, and the office he holds is an entity of the government of the Commonwealth. *See* Va. Code Ann. § 17.1-502 (creating the office of the Executive Secretary). During the time at issue, Alston was acting as an employee of the Virginia Department of Corrections, a state agency.

---

[10] Thorne did not oppose either Hade or Alston's motion to dismiss. He did, however, oppose the Executive Secretary's previous motion to dismiss the Complaint. Because Thorne is representing himself, the Court will consider the arguments he raised in his previous filing to the extent that they apply to Hade's current motion to dismiss.

In *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989), the Supreme Court held that the "person[s]" who can be sued for damages under § 1983 do not include states and state officials acting in their official capacity. *Will*, 491 U.S. at 71; *see also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 483 n.5 (4th Cir. 2005); *Smith v. Ozmint*, 394 F. Supp. 2d 787, 790-91 (D. S.C. 2005). State officials can be persons under § 1983 when sued in their official capacities for injunctive relief. *Id.* at 71 n.10. As noted above, however, Thorne's requests for injunctive relief fail as a matter of law. *See supra* subpart III.C. To the extent that Thorne's lawsuit raises claims against state officials Hade and Alston in their official capacities, then, those claims will be dismissed.

F. <u>Section 1983 Claims – Defendants Hade and Alston –</u>
<u>Personal Capacity</u>

Although § 1983 claims for damages cannot lie against state officers in their official capacities under *Will*, the Supreme Court, in *Hafer v. Melo*, 502 U.S. 21, 27 (1991), made it clear that state officials could be sued for damages in their personal capacities for actions they took as state officials. Defendants Hade and Alston claim that, to the extent that Thorne sued them in their personal capacities, he has failed to state cognizable claims under § 1983. *See* Fed. R. Civ. P. 12(b)(6).

31

1. <u>Defendant Hade</u>

The Court agrees that Thorne has failed to state a claim against Hade through § 1983.  Thorne did not allege that Hade did anything to violate his constitutional rights.  The only reference to the Office of the Executive Secretary of the Supreme Court in the Amended Complaint appears in ¶ 11: "The Rappahannock Regional Drug Court Program received $175,148.00 in fiscal 2004 for adult and $137,778.00 for juvenile drug treatment services from the Federal government (Source office of the Executive Secretary of the Supreme Court of Virginia)."

Hade's motion explains the attenuated relationship between his office of Executive Secretary and the Commonwealth's drug courts.  While state law charges the Supreme Court of Virginia with providing "[a]dministrative oversight for implementation of the Drug Treatment Court Act," Va. Code Ann. § 18.2-254.1(E), the law only requires the Executive Secretary to (1) sit (or have a designee sit) on the state drug treatment court advisory committee and (2) "develop a statewide evaluation model and conduct ongoing evaluations of the effectiveness and efficiency of all local drug treatment courts."  Va. Code Ann. § 18.2-254.1(F) & (N).

Obviously, ¶ 11 of the Complaint, which only references the Executive Secretary as the source for the quoted monetary figures, does not contain any allegation that Hade violated

Thorne's constitutional rights.  While numerous paragraphs in the Amended Complaint refer to the "Virginia Supreme Court" or the "Supreme Court of Virginia,"  *see* Am. Compl. at ¶¶ 6, 7, 11, 13, 16, 22, 33, 46, 47, 55, 71, 76, 78, 84, 86, 87, 89, 101, 102, 103, and 107, Hade is not the Supreme Court.  Thus, in the only allegation that could be read to refer directly to Hade, the Amended Complaint falls far short of stating a claim upon which relief can be granted.  It does not allege that Hade personally violated Thorne's constitutional rights.  Without some personal connection between the defendant and a denial of constitutional rights, a § 1983 action must fail.  *See Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977).

Other allegations refer to "Defendants" and "all Defendants."[11]  It is clear from the context of these allegations that none applies to Hade in his personal capacity.  Hade was not individually involved in forcing Thorne into any particular drug treatment program.  He did not affirmatively require the use of AA or NA in the local drug treatment program at issue.  Letting the case to proceed against Hade based on these allegations would allow vague drafting, whether done intentionally or not, to subject Hade to the burdens of further litigation in a suit in

---

[11] *See* Am. Compl. at ¶¶ 17-19, 27, 32, 61, 77, 108, 112, 115, 116, 119, 126, 128, 130-33, 135-37, 139, 140, 143, 144, 146, 147, 153-157, 160-64, 172, 177, and 178.

which he has no legitimate place.  The Court will not sanction such a result.  It will dismiss Hade from this lawsuit.

2. <u>Defendant Alston</u>

Alston argues that Thorne's complaint fails to state a claim against her under Rule 12(b)(6).  The portions of the Amended Complaint that name Alston explicitly or discuss her actions in any detail allege that she violated the Sixth Amendment, the Fourteenth Amendment, and the ADA.  *See* Am. Compl. at ¶¶ 57, 90-113, 160, 165, 168, 174.  As noted above, *see* subpart III.A., Thorne does not have a valid ADA claim against Alston or any other defendant.  At this point, then, the Court will consider the allegations in ¶¶ 54-58, which claim that Alston's actions violated Thorne's Sixth Amendment rights and, though the allegation is not as clear, Thorne's procedural due process rights under the Fourteenth Amendment.

Thorne claims that, during the "sanctions" hearings that followed his failure to adhere to the drug court's rules, the allegations against him, the testimony of witnesses, and the presentation of evidence violated his Sixth Amendment rights. *Id.* at ¶ 57.  Testimony, he asserts, was "made in secrete [sic] between the Drug Court and RACSB administrators, {Defendants Kelly Hale, Judith Alston and Sharon Gillian}," the RACSB, the Commonwealth's Attorney, and the state court judge, "to include whispered testimony to the presiding Judge at the bench, so as to

34

exclude Plaintiff . . . from all measures of defense and redress commensurate with Due and Compulsory Process of Law."  *Id.*

Paragraph 57, the only part of the Amended Complaint's Sixth Amendment allegations that actually names Alston, fails to allege any act or omission on Alston's part that could constitute a Sixth or Fourteenth Amendment violation.

It is axiomatic that the judge, not any of the witnesses, regulates the manner in which evidence is presented in court.  If the Commonwealth's Attorney solicited and used "secret" evidence, or if the judge in question accepted and relied upon such evidence, then any remedy would lie against the state, not the witness who provided so-called "secret testimony." Likewise, if Thorne was not allowed to defend himself in court, the blame does not lie with Alston as a witness.  It is apparent from the face of the Amended Complaint that Thorne has failed to state a Sixth Amendment claim against Alston in her personal capacity.[12]

Finally, for the same reasons stated in the section dismissing Hade from this case, *see supra* subpart III.F.1., the Court concludes that the catch-all references to "Defendants" and "all Defendants" in the Amended Complaint do not refer or apply to Alston in her personal capacity.  Most of the paragraphs in

---

[12] Additionally, witness immunity shields Alston from suit based on her actions as a witness against Thorne.  *See Burke v. Miller*, 580 F.2d 108, 109 (4th Cir. 1978).

35

question contain conclusory allegations that refer to Thorne's treatment program.  Alston was Thorne's probation officer.  She did not force Thorne into the Drug Court program.  While she may have been responsible for monitoring his compliance with its requirements, there is no indication that Alston had any authority to alter the program that Thorne agreed to complete as part of his plea deal.  The Court will dismiss Alston from this case.

G. <u>Section 1983 Claims – Defendants Hale and Killian</u>

Defendants Hale and Killian assert that qualified immunity blocks Thorne's § 1983 claims against them.  Government officials sued under § 1983 may be entitled to qualified immunity, which protects them from civil suits when their performance of discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Under *Saucier v. Katz*, courts undertake a two-part inquiry to determine whether the defense applies.  533 U.S. 194, 201-02 (2001).  A court determines whether, "[t]aken in the light most favorable to the party asserting the injury," the facts alleged by that party "show the officer's conduct violated a constitutional right."  *Id.* at 201.  If a constitutional violation did occur, the court then asks "whether the right was

clearly established." *Id.* at 202. In making this second inquiry, the court "ascertains 'whether a reasonable [official] could have believed [the challenged conduct] to be lawful, in light of clearly established law.'" *Meeker v. Edmundson*, 415 F.3d 317, 323 (4th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

In a recent case, the Supreme Court held that the sequence of inquiry required by *Saucier* is no longer mandatory. *Pearson v. Callahan*, __ S. Ct. ____, 2009 WL 128768, at *9 (Jan. 21, 2009). Judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* With this in mind, the Court turns to Thorne's allegations of constitutional violations by Hale and Killian.

At this preliminary stage of the proceedings, the Court will not dismiss the claims against either Hale or Killian, both of whom are alleged to be "directors" of the drug court program for the RACSB. The Amended Complaint states that both Hale and Killian were to some extent responsible for implementing the treatment regimen to which Thorne was subjected, which included mandatory participation in AA/NA. *See* Am. Compl. at ¶ 15 (claiming that Killian "was responsible for all recommendations to Drug Court for treatment and clinical matters," including

37

"substance abuse issues."); *id.* at ¶ 76 (claiming that Thorne was "subjected to the State religions of AA and NA by . . . [the] directors" of the Drug Court and the RACSB); *id.* at ¶ 89 (alleging due process deprivations by the "Directors" of the RACSB and the Drug Court).[13]

While the precise allegations against them are not stated with the precision that might be required of a complaint drafted by counsel, either Hale or Killian may have violated Thorne's rights by forcing him into a constitutionally-impermissible treatment scheme.  The Court acknowledges that the allegations in the Amended Complaint are broadly phrased, inaccurately worded, and sometimes contradictory.[14]  But the gist of Thorne's allegations is that the policies put into action by the Drug Court and the RACSB – which were purportedly overseen by Hale and Killian at the time in question – resulted in religious discrimination.  Given Thorne's status as a *pro se* litigant and

---

[13] Thorne also submits that "Defendants . . . did deny the Plaintiff's numerous and repeated requests to attend Bible based programs as an alternative to AA and NA."  Am. Compl. at ¶ 27.  While the Court is wary of Thorne's catch-all claims against "Defendants," *see supra* subpart III.F, this allegation can plausibly be construed to apply to Hale and Killian.

[14] The Court also recognizes that a *respondeat superior* relationship alone does not create § 1983 liability.  *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999).  Instead, "a plaintiff must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."  *Id.*  Taken as a whole and construed in favor of the plaintiff, Thorne's pleadings go beyond allegations of a *respondeat superior* relationship.  Thorne claims, for example, that the "directors" of the drug court program violated his rights by subjecting him to the AA and NA programs.  Am. Compl. at ¶ 76.

the preliminary nature of the motion to dismiss, the Court finds that Thorne has adequately alleged constitutional violations by Hale and Killian.

The second step in the qualified immunity inquiry requires the Court to ask whether the allegedly violated right was clearly established at the time the violation occurred.

Other courts have found that, because of the religious focus of the AA/NA programs, forcing prisoners and parolees into such programs violates their clearly established constitutional rights. *See Inouye v. Kemna*, 504 F.3d 705, 713 (9th Cir. 2007); *Warner v. Orange County Dept. of Probation*, 115 F.3d 1068 (2d Cir. 1997), *aff'd*, 173 F.3d 120 (2d Cir. 1999), *cert. denied sub nom. Orange County Dept. of Probation v. Warner*, 528 U.S. 1003 (1999); *Kerr v. Farrey*, 95 F.3d 472 (7th Cir. 1996).  In *Inouye*, the court found that the pertinent Establishment Clause law forbidding coerced participation in AA was clearly established by "[t]he vastly overwhelming weight of authority."  504 F.3d at 714-15 (collecting cases).

In a recent Michigan case with closely analogous facts, the district court found that the case manager at a drug court that utilized a religious drug treatment program did not have qualified immunity from First Amendment claims.  The court reasoned that the individual had a First Amendment right to be free from the state's coercion of him into a religious treatment

39

program that conflicted with his own beliefs.  Moreover, the court found that the right was clearly established at the time of the violation.  *Hanas v. Inner City Christian Outreach, Inc.*, 542 F. Supp. 2d 683, 701 (E.D. Mich. 2008) (citing *Inouye v. Kemna* for the proposition that the Free Exercise right to be free from similar religious coercion was established as early as 2001).  The district court denied qualified immunity to the Drug Court case manager serving Mr. Hanas, and held that the treatment group and the pastor running it were acting under color of state law, which made them potentially liable under § 1983.

Thus, while no party cited binding Fourth Circuit precedent on this particular Establishment Clause issue, other courts that have analyzed the "clearly established" prong in similar cases have found that coercion into religious drug treatment programs violated "clearly established" constitutional law.  At this preliminary stage of the litigation, before discovery has allowed the parties to sharpen their claims and defenses, the Court will not dismiss Thorne's claims against Hale and Killian.  It finds the reasoning in *Inouye* and *Hanas* persuasive on the issue of whether the right in question was "clearly established" at the time of the alleged violation.  Too many courts have found similar allegations of forced compliance with religious addiction treatment programs constitutionally

40

problematic for Killian or Hale to claim that she was not on notice of a potential constitutional violation.

## IV. Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss will be granted in part and denied in part.  All of Thorne's ADA claims, state law claims, and requests for injunctive and equitable belief will be dismissed.  Likewise, the claims against the Regional Jail and the Regional Jail/Drug Court will be dismissed, and the Court will dismiss the causes of action against both Hade and Alston.  The motion to dismiss by Defendants Hale, Killian, and the RACSB will be denied in all other respects.  Finally, the Court will deny, without prejudice, Hade and Alston's motion to strike Thorne's supplemental evidentiary filing.

An appropriate Order will issue.


March 26, 2009                              /s/
Alexandria, Virginia              _____
                                        James C. Cacheris
                              UNITED STATES DISTRICT COURT JUDGE